| Fill in this information to identify the case: | |
|---|---|
| Debtor Name: | Dogs Are People Too, LLC and Copeford Holdings, LLC |
| United States Bankruptcy Court for the: | Northern District of Texas, Dallas Division |
| Case Number (if known) | 24-33079(V) JOINTLY / ADMINISTERED |

☒Check if this is an amended filing.

Official Form 425A

**Plan of Reorganization for Small Business Under Chapter 11**　　　　　　　　　　　　　　　　**02/20**

**DOGS ARE PEOPLE TOO, LLC and COPEFORD HOLDINGS, LLC SECOND AMENDED JOINT PLAN OF REORGANIZATION, Dated April 28, 2025**

**Background for Cases Filed Under Subchapter V**

**A.　　　Description and History of the Debtor's Business**

Dogs Are People Too, LLC ("**DAPT**") was formed on December 10, 2008, as a Limited Liability Company under the laws of Texas. Copeford Holdings, LLC ("**Copeford**") was formed on August 19, 2017, as a Limited Liability Company under the laws of Texas. DAPT is in the business of dog boarding, grooming, and daycare. Copeford owns the real property, on which DAPT operates its business. This real property consists of the land as well as a 5,700 square foot, state of the art dog boarding and training facility (the "**Property**"). The Property is on the market for sale at a list price of $1.5 million. DAPT is a franchisee of Camp Bow Wow.

In March 2021, DAPT and Copeford entered into three loan agreements with Pioneer Bank, SSB to purchase land and to convert the current structure to a state of the art dog boarding and daycare facility. The first loan, loan number ending in 3685 ("**Loan A**"), in the initial amount of $735,838.00 was to be amortized over a period of twenty-five years. The second loan, loan number ending in 3686 ("**Loan B**") in the initial amount of $588,669.00 was a companion loan to Loan A. Loan B was originally due and payable January 1, 2022. The original intention was for Debtors to refinance Loan B with the Small Business Administration ("SBA") before the loan matured. According to Stacey Copeland, the owner of DAPT, Pioneer Bank was facilitating to process to convert the loan to a loan guaranteed by the SBA. The third loan, loan number ending in 3687 ("**Loan C**") is loan guaranteed by the SBA in initial the amount of $100,000.00. All loans are subject to cross-default acceleration clauses. In connection with the loans, Debtors executed Deeds of Trust on the property bought with the loans in order to secure each loan. Debtors also pledged the real property, all equipment and proceeds as collateral in exchange for the loans. The loans are guaranteed by Stacey Copeland and husband David W. Copeland.

Debtors attempted to refinance Loan B but were unable to acquire a refinance or replacement loan before the loan matured. Loan B was subsequently modified to extend the maturity date -- first by Pioneer Bank, and then by Sunflower Bank after the two banks merged. Debtors entered into a Forbearance Agreement with Sunflower Bank on June 3, 2024. Under the Forbearance Agreement, Debtors agreed to provide certain financial information as well as to pay Loan B and Loan C in full on or before August 31, 2024. Debtors were unable to find a replacement loan during the forbearance period sufficient to pay Loans B and C in full, so Debtors filed.

**Dogs Are People Too, LLC**
**Revenue - Comparative Report**
**For periods 2022 to 2024**

| Revenue | 2024 | 2023 | 2022 |
|---|---|---|---|
| Jan. 1 to Sept. 30 | $ 501,045.59 | $ 494,257.84 | $ 534,314.25 |
| Oct. 1 to Nov. 30 | $ 108,735.81 | $ 112,845.90 | $ 104,786.17 |
| Total | $ 610,238.40 | $ 607,103.74 | $ 639,100.42 |

170951849.2

**Copeford Holdings, LLC**
**Revenue - Comparative Report**
**For periods 2022 to 2024**

| Revenue | 2024 | 2023 | 2022 |
|---|---|---|---|
| Jan. 1 to Sept. 30 | $ 98,918.75 | $ 59,175.00 | $ 45,000.00 |
| Oct. 1 to Nov. 30 | $ 19,682.06 | $ 17,875.00 | $ 9,460.00 |
| Total | $ 118,600.810 | $ 77,050.00 | $ 54,460.00 |

An updated copy of the profit and loss statements from January through December 2024, for DAPT and Copeford are attached hereto as **Exhibits 1.a. and 1.b**. A copy of the updated Balance sheets through December 2024 for DAPT and Copeford are attached as **Exhibits 1.c., and 1.d.**

**B.    Liquidation Analysis**

To confirm this Plan of Reorganization (the "Plan"), the Court must find that all claim and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit 2**.

**C.    Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The final Plan payment is expected to be made by April 1, 2029.

The Plan Proponent has provided projected financial information as **Exhibit 3**.

The Plan Proponent's financial projections show that the Debtor will have sufficient projected disposable income (as defined by Code § 1191(d)) for the period described in Code § 1191(c)(2).

The Debtor's Projections are based on its historical operating results, and projections of future operations.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan under chapter 11 of the Code proposes to pay creditors of Dogs Are People Too, LLC from an exit financing facility with Bank of Desoto approved in the net amount of $1.178 million after payment of a 1% origination fee[1], an infusion of cash from Mrs. Copeland in the amount of $200,000, cash on hand estimated at $120,000, and any excess cash flow from operations on a going forward basis, as needed.

This Plan provides for:

**2** classes of administrative and priority claims;

**2** classes of secured claims;

**1** class of non-priority unsecured claims; and

**1** class of equity security holders.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

---

[1] The loan is at an interest rate of 10.5% amortized over 25 years with no prepayment penalty.

---

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 **Class 1 a and b** | | Class 1 a includes all Allowed claims entitled to administrative and priority under Code § 507(a) (except professional fee claims other than the Subchapter V Trustee). This class includes priority tax claims, franchise fees, Subchapter V Trustee fees, and administrative expense claims in the ordinary course of business. Class 1 b includes Allowed professional fee claims |
| 2.02 **Class 2** | | The secured claim of the U.S. Small Business Administration, to the extent Allowed as a secured claim under § 506 of the Code. |
| 2.03 **Class 3** | | The secured claim of Sunflower Bank, to the extent Allowed as a secured claim under §506 of the Code. |
| 2.08 **Class 4** | | Class 4  All Non-Priority General Unsecured Claims, to the extent Allowed under Code §502, including all claims, as defined in Code § 101(5), that are not secured by a lien or charge against or interest in property in which the bankruptcy estate has an interest pursuant to Code §506, and also are not administrative or priority claims pursuant to Code §§ 503 or 507. General unsecured claims shall also include all claims arising under Code § 502(g) for any claims arising from the rejection of any executory contracts or unexpired leases. |
| 2.09 **Class 5** | | All **Equity Interests** in the Debtor. |

---

## Article 3: Treatment of Administrative Claims

| | |
|---|---|
| 3.01 **Administrative expense claims** | Each holder of an administrative expense claim or priority claim Allowed under § 503 and 507 of the Code (including the Allowed claim of the Subchapter V Trustee) shall be paid in full, in cash, on the latter of the Effective Date or when Allowed pursuant to § 1191(e) of the Code. Any professionals holding retainers may apply such retainer funds directly to the payment of any Allowed fees and costs, and all remaining unpaid professional fee claims shall be paid in full when such is Allowed by final order of the Bankruptcy Court or by agreement between such professional and the Debtors from a reserve of $175,000. Commencing on the Effective Date, Debtors shall first contribute their Disposable Income to the payment of allowed administrative expense claims, consistent with section 1191(e) of the Code and this Plan.

The deadline for filing requests for allowance of administrative expense claims including professional fee claims shall be thirty (30) days after the occurrence of the Effective Date (the "Administrative Claim Bar Date"). In the event any request for allowance of an administrative expense claim is not filed by the Administrative Claim Bar Date, then it shall be forever barred and unenforceable against the Debtors or Reorganized Debtors, as applicable, and any property revested in the Reorganized Debtors.

The Subchapter V Trustee's fees shall be paid in full on the later of the Effective Date or when the fees are approved by the Bankruptcy Court.

Notwithstanding the aforementioned, pursuant to 11 U.S.C. Section 503(b)(1)(D), Dallas County shall not be required to file a request for the payment of post-petition ad valorem property taxes by the Administrative Claim Bar Date and, to the extent not already paid, the Reorganized Debtors shall pay their respective post-petition ad valorem property taxes prior to the delinquency date set forth under Texas law. |
| 3.02 **Priority tax claims** | Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan. The Debtors believe they are current on ad valorem priority taxes, which is held by various ad valorem taxing authorities.  To the extent, not previously paid, Dallas County's secured ad valorem property tax claims in the aggregate amount of $11,846.79 as of the Petition Date shall be paid in full on or before the Effective Date, with interest accruing from the Petition Date at the statutory rate pursuant to 11 U.S.C. Sections 506(b) and 511 and Texas Property Tax Code Section 33.01. Dallas County shall retain its liens on its collateral until such time as its property tax claims are paid in full and such liens are continuing under applicable statutes.  The Reorganized Debtors' failure to pay Dallas County's property tax claims in full by the Effective Date is an event of default. |

3.03 **Statutory fees**          Not applicable pursuant to 28 U.S.C. § 1930(a)(6)(A).

---

**Article 4: Treatment of Classes under the Plan**

    **4.01**    **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class1 – Administrative and Priority Claims** | ☒Unimpaired | Each holder of a Class 1 Allowed priority and administrative claims pursuant to Code § 503 and 507 (excluding Allowed professional fee claims) shall be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is Allowed by a final non-appealable order. Allowed professional fee claims shall be paid as provided in Section 3.01 of the Plan.  Class 1 is unimpaired and is deemed to accept the Plan. |
| **Class 2 – Secured Claim of U.S. Small Business Administration** | ☒Impaired | The holder of a Class 2 Allowed secured claim shall retain its liens in the order of priority that existed prepetition until its Allowed secured claim is paid in full and shall continue to receive cash payments at the rate of $1,700 per month in accordance with the loan documents and continuing on the same date of each month thereafter until the Allowed secured claim is paid in full. Class 2 is impaired and thus is entitled to vote on the Plan. |
| **Class 3- Secured Claim of Sunflower Bank** | ☒Impaired | The holder of a Class 3 Allowed secured claim is Sunflower Bank which holds three loans with the Debtors.  As of May 15, 2025, Sunflower Bank's aggregate Allowed secured claim with interest on the three loans totals $1,345,896.42 through May 15, 2025as set forth below: |

**Loan 3685**

| | |
|---|---|
| **PRINCIPAL** | **$633,953.18** |
| **INTEREST** | **$23,687.47** |
| **PER DIEM** | **$171.695652** |
| **APPRAISAL FEE** | **$5,700.00** |
| **LEGAL FEES/COSTS** | **$37,000.00** |
| **TOTAL** | **$700,340.65** |

**Loan 3686**

| | |
|---|---|
| **PRINCIPAL** | **$569,425.07** |
| **INTEREST** | **$4,033.43** |
| **PER DIEM** | **$79.086815** |
| **TOTAL** | **$573,458.50** |

**Loan 3687 (SBA 7a Loan)**

| | |
|---|---|
| **PRINCIPAL** | **$71,248.23** |
| **INTEREST** | **$849.04** |
| **PER DIEM** | **$19.296395** |
| **TOTAL** | **$72,097.27** |

| | |
|---|---|
| **TOTAL SECURED CLAIM** | **$1,345,896.42** |

On the Effective Date, Sunflower Bank shall subordinate its liens against the Debtors' assets to Bank of DeSoto in exchange for payment of $1.2 million in cash ("Sunflower Cash Payment"). Sunflower Bank will apply the Sunflower Cash Payment to satisfy Loan 3687 (SBA 7a Loan) in full then to other amounts under the other notes in its sole discretion. After the application of the Sunflower Cash Payment, Sunflower's Allowed secured claim will be $145,896.42 to be paid by Debtors in in 36 equal installments of principal and interest ($2,499.45/month) beginning on the 15th day of the first month following the Effective Date and shall bear interest in the amount of 5% per annum with no prepayment penalty.(the "Sunflower Remaining Claim"). The Sunflower Remaining Claim shall be secured by the assets of the Debtors, including the Property, as set forth in the Sunflower Loan Documents (defined below) subordinate only to the liens granted to Bank of DeSoto which shall hold a first priority lien on the assets, including the Property. Sunflower Bank shall retain its second priority lien in the assets, including the Property (without the necessity of any additional UCC or Real Property lien filings), until the Sunflower Remaining Claim is paid in full. Should the Debtors sell the business or the Property while the Sunflower Remaining Claim is outstanding, the Sunflower Remaining Claim shall be accelerated and immediately become due and satisfied in full from the proceeds of the sale of the business and/or Property after paying the broker's commission and closing costs.

All loan documents attached to the Sunflower Bank Proof of Claim, including all loan documents executed in connection therewith, whether referenced in the Sunflower Bank Proof of Claim or not, including guarantees, are collectively referred to herein as the "Sunflower Bank Loan Documents." The Sunflower Bank Loan Documents shall remain in full force and effect except as expressly modified under this Plan, including the subordination to Bank of DeSoto. Notwithstanding anything in this Plan to the contrary, all rights and remedies of Sunflower Bank under the Sunflower Bank Loan Documents shall control in the event of a default by Debtor in connection with failure to make a payment to Sunflower Bank under the Sunflower Remaining Claim or failure of Debtor to comply with any other provision of the Sunflower Bank Loan Documents, including, but not limited to, rights of acceleration (without notice to cure of any kind which has been waived), all rights of foreclosure of the Debtor's assets and/or the Property, and all reasonable and necessary legal fees/costs incurred by Sunflower Bank in connection with enforcing its rights and remedies under this Plan and/or the Sunflower Bank Loan Documents. Notwithstanding anything in this Plan to the contrary, nothing under this Plan shall release, modify, or otherwise affect the liability under the Sunflower Bank Loan Documents of any non-Debtor borrower/guarantor, including STACEY ALFORD COPELAND, DAVID WAYNE COPELAND, and PET BUDDIES, LLC ("Non-Debtor Guarantors"). Provided the Debtors do not default on their payments to Sunflower under the Plan, Sunflower agrees to forbear from exercising its rights under the Bank Loan Documents against the Non-Debtor Guarantors.

Sunflower Bank shall be entitled to any necessary and reasonable legal fees and costs incurred by Sunflower Bank after Confirmation and prior to payoff of the Sunflower Remaining Claim incurred in connection with enforcing its rights under this Plan and/or the Sunflower Loan Documents without further order of this Court.

Class 3 is impaired and thus is entitled to vote on the Plan.

| | | |
|---|---|---|
| **Class4–Non-Priority General Unsecured Claims** | ☒Impaired | Each holder of a Class 4 non-priority general unsecured Allowed Claim shall be paid in full after payment in full of Allowed Administrative Claims. Each payment shall be made in equal monthly disbursements on the 15th day of each month, after the Debtor's payment of Allowed Administrative Expenses in full, with the first payment commencing no later than the third month following the Effective Date with the final payment made no later |

than 36 months from the Effective Date from a reserve of $52,509.00 ("Class 4 Dividend"). Any portion of a Class 4 nonpriority general unsecured claim in excess of the Class 4 Dividend shall be discharged in accordance with Article 9 of this Plan. Class 4 is impaired and thus is entitled to vote on the Plan.

| | | |
|---|---|---|
| **Class5 –Equity Security Interests** | ☒**Unimpaired** | Except to the extent that the Holders of Class 5 Equity Interests agree to less favorable treatment, they shall retain their Equity Interests, subject to the terms and conditions of this Plan. Class 5 is unimpaired and thus is deemed to accept the Plan. |

## Article 5: Disputed Claims

| | |
|---|---|
| 5.01 **Disputed Claim** | A "disputed claim" is a claim that has not been allowed/disallowed or estimated by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection. |
| **5.02 Disallowed Claim** | A "disallowed claim" is a claim that has been disallowed by a final non-appealable order or no proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order. |
| 5.02**Settlementof disputed claims** | The Debtor will have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Bankruptcy Rule 9019. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | |
|---|---|
| 6.01 **Assumed executory contracts and unexpired leases** | Debtors propose to assume all executory contracts and unexpired leases as of the Effective Date and cure all prepetition arrearages on the Effective Date, provided such executory contract and unexpired lease shall not have been terminated before the Effective Date. The Debtors believe they are current with all counterparties to any executory contract and unexpired lease being assumed under the Plan. Should any counterparty disagree, such counterparty shall file a pleading with the Bankruptcy Court specifying the alleged cure amount it believes is owed with sufficient documentation and evidence to support the alleged cure amount asserted by the Administrative Claim Bar Date or such claim shall be forever barred and unenforceable against the Debtors or Reorganized Debtors, as applicable, and any property revested in the Reorganized Debtors. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this Section 6, pursuant to Code § 365, as of the Effective Date. |

## Article 7: Means for Implementation of the Plan

| | |
|---|---|
| 7.01**FundingPlan Payments** | Debtors shall use its exit financing facility with Bank of Desoto approved in the net amount of $1.067 million after payment of a 1% origination fee[2], an infusion of cash from Mrs. Copeland in the amount of $230,000, cash on hand estimated at $115,000, and any excess cash flow from operations on a going forward basis, as needed to fund the Plan. |
| | . |
| 7.02**Order of Distribution of Debtor's Disposable Income.** | During the Plan Term, Debtor's Disposable Income shall be disbursed in the following order:<br><br>1. First, to Allowed administrative expenses in Debtor's case until those claims are paid in full (§3.02); and<br><br>2. Then, to Class 4 Non-Priority General Unsecured Claims through the end of the Plan Term (§4.01). |

---

[2] The loan is at an interest rate of 10.5% amortized over 25 years with no prepayment penalty.

7.03 **Disbursing Agent.** The Reorganized Debtor will serve as disbursing agent and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

7.04 **Post-Confirmation Default.** In the event Debtors become delinquent on their obligations under the Plan, the affected creditor or creditors shall provide written notice of such default to the Debtors and Debtor's Counsel via email as follows:

Trey Monsour: tmonsour@foxrothschild.com; and

Stacey Copeland: stacey@cbwswdallas.com

Debtors shall have fifteen (15) calendar days from receipt of said notice to cure the default. If the Debtors fail within fifteen (15) calendar days after the date of the email of the notice of default to cure the default, then Debtors are in "Material Default" under the Plan to all the members of the affected class and the applicable creditor(s) may pursue any and all rights and remedies it may have under contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings in the Bankruptcy Court. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Bankruptcy Court, has relief from automatic stay or the Confirmation Order, to the extent necessary, and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan.

## Article 8: General Provision

8.01 **Definitions and rules of construction** The definitions and rules of construction set forth in Code §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1. Bar Date. December 9, 2024 is the date by which creditors (except for governmental units), were required to file proofs of claim with respect to pre-petition claims, except with respect to claims that were not scheduled by the Debtors in its filed bankruptcy schedules as undisputed, non-contingent, and liquidated. For creditors that are governmental units, the deadline to file a proof of claim is March 29, 2025.

2. Allowed. With reference to any claim against the Debtors: (a) any claim against the Debtors that has been listed in the Debtors' filed bankruptcy schedules, as such schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount, and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any claim allowed (i) under the Plan, (ii) by final order of the Bankruptcy Court, including without limitation via an estimation proceeding pursuant to section 502(c) of the Bankruptcy Code; or (c) as to which a proof of claim has been timely filed by the applicable Bar Date in a liquidated amount with the Bankruptcy Court, pursuant to the Code or any order of the Bankruptcy Court, or has been filed with leave of the Bankruptcy Court after notice and a hearing, *provided that* no objection to the allowance of such claim (or motion to value collateral in the event of a secured claim) has been filed by any party in interest before the deadline to object to confirmation of the Plan as may be scheduled by the Court. With respect to a secured claim, the Allowed amount shall mean the value of the secured creditor's collateral and its lien therein as determined by the Bankruptcy Court pursuant to § 506, or as agreed upon, and subject to the normal claim bifurcation process, which may result in a claim being partly secured and partly unsecured if the value of the secured creditor's interest in the collateral is determined to be less than the amount of the debt owed to creditor. Allowed General unsecured claims shall not paid any accrued interest.

8.02 **Effective Date** The effective date of this Plan (the "Effective Date") is either May15, 2025, or upon notice to all creditors and parties in interest, thirty (30) days thereafter. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03 **Severability** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

170951849.2

| 8.04 **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
|---|---|
| 8.05 **Plan Term** | The Plan Term shall be 36 -months commencing and after the Effective Date of the Plan. |
| 8.06 **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.07 **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.08 **Corporate Governance** | Stacey Copeland shall remain as the sole manager of the Debtor, which is consistent with the company's existing organizational documents. |
| 8.09 **Retention of Jurisdiction** | The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Effective Date for the following purposes, it being expressly intended that such retention of jurisdiction shall extend to any actions or proceedings commenced prior or subsequent to the Effective Date, whether by Debtors or the parties specified herein: To hear and determine any objections to the allowance of claims; To determine any and all applications for compensation for any professionals and similar fees; To modify the Plan or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Code; To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan; To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case; To adjudicate all claims to a security or ownership interest in any of the Assets, or in any proceeds thereof; To determine all questions and disputes regarding recovery of and entitlement to any property of Debtors, or in any proceeds thereof; To determine issues and disputes concerning entitlement to distributions to be made under and pursuant to the Plan; To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtors' limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate; To enter a discharge and final decree closing the Chapter 11 Case; To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter. |

If the Debtors' Plan is confirmed under Code § 1191(a), on the Effective Date of the Plan, the Debtors shall be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Code § 1141(d)(1)(A) of the Code, except that the Debtors shall not be discharged of any debt:(i) imposed by this Plan; or to the extent provided in Code § 1141(d)(6). If the Debtors' Plan is confirmed under Code § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due as otherwise provided in Code § 1192 of the Code. The Debtors shall not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under Code § 523(a) of the Code, except as provided in Bankruptcy Rule 4007(c).

## Article 10: Other Provisions

      1.     <u>Prepayment</u>. The Debtors may prepay any Allowed claim under the Plan in advance and without prepayment penalty.

170951849.2

2.     <u>Modified Treatment</u>. A holder of an Allowed claim in any Class may voluntarily agree to a less favorable treatment of its claim than is as set forth in the Plan; *provided, however*, that such agreement must be in writing and signed by both the Debtors and that party.

3.     <u>Disallowance of Claims Not Allowed and Tardy Proofs of Claim</u>. The occurrence of the Effective Date shall operate to disallow and expunge the claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtors' filed bankruptcy schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtors' schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; or (c) are the subject of a proof of claim for a pre-petition claim that was filed after the Bar Date.

4.     <u>Claims Objections</u>. Notwithstanding any rule to the contrary, the Debtor has the right to object to any claims, or file motions to value collateral, up to 180 days after the Plan's Effective Date.

5.     <u>Elimination of Vacant Classes</u>. Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim or a claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class.

6.     <u>Plan Distributions</u>. The Debtors shall make all payments required under the Plan.

7.     <u>Compensation of Subchapter V Trustee</u>. The Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Effective Date of the Plan pursuant to and consistent with Code § 330(a)(1).

8.     <u>Post-Confirmation Quarterly Reports</u>. From and after the Effective Date, the Reorganized Debtors shall file post-confirmation quarterly operating reports until all distributions are made under the Plan.

9.     <u>*Ipso Facto* and Similar Contract/Lease Provisions Ineffective</u>. Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to the Debtor shall be void and of no further force or effect with respect to the Debtors and the Reorganized Debtors to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtors as a result of, or gives rise to a right of any entity based on (i) the insolvency or financial condition of the Debtors, (ii) the commencement of the Chapter 11 Case, (iii) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation, or (iv) any transactions occurring under or pursuant to the Plan.

10.     <u>Default Under Plan; Remedies</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as the Reorganized Debtors are not in Material Default (as hereinafter defined) under the Plan. In the event the Reorganized Debtor fails to timely perform any of the obligations in the Plan from and after the Effective Date, the applicable creditor or party-in-interest shall provide written notice thereof to all of the following: the Reorganized Debtor (Stacey Copeland, Dogs Are People Too, LLC and Copeford Holdings, LLC, stacey@cbwswdallas.com) and the Reorganized Debtor's counsel via email (tmonsour@foxrothschild.com; Attn: Trey Monsour), of the default in writing in accordance with the notice provisions herein. If the Reorganized Debtors fail within fifteen (15) calendar days after the date of the email of the notice of default either: (i) to cure the default; to obtain from the Bankruptcy Court an extension of time to cure the default, which shall be given for good cause shown if the cure reasonably requires more than fifteen (15) days to cure and the Reorganized Debtors initiate reasonable steps to begin such cure and completes all reasonable and necessary steps to cure sufficient to produce compliance as soon as reasonably practical; or (iii) to obtain from the Bankruptcy Court a determination that no default occurred. If the Reorganized Debtors fail to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights and remedies it may have under the contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings before the Bankruptcy Court. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Court has relief from automatic stay to the extent necessary and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan.

11.     <u>Exculpation</u>. To the fullest extent permitted by applicable law, neither the Debtors, the Reorganized Debtors, Stacey Copeland, nor any of their respective representatives or professionals shall have or incur any liability to any holder of a claim or equity interest against the Debtors, or any other party-in-interest, for any act, omission, transaction or other occurrence occurring on or after the Petition Date in connection with or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, including without limitation, the administration of the Plan or the property to be distributed under the Plan, except and solely to the extent such liability is based on fraud, gross negligence, or willful misconduct as determined by a final order, but in all respects such persons shall be entitled to reasonably rely upon the advice of counsel with

respect to their duties and responsibilities pursuant to the Plan. This exculpation is in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpated parties from liability.

12.      <u>Judgments Void</u>. Any judgment, decision, or order obtained before the Effective Date in any court that is inconsistent with the terms, conditions and treatment provided by the Plan or the Confirmation Order shall be null, void, and without effect.

13.      <u>Retention of Causes of Action/Reservation of Rights</u>. Nothing herein or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of the Debtors' estate under any provision of the Code or any applicable non bankruptcy law, including (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, or their officers, directors, or representatives and (ii) for the turnover of any property of the Debtors' estate. Nothing herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any claim left unimpaired by the Plan. the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses that they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtors' legal and equitable rights with respect to any claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced. In accordance with § 1123(b)(3) of the Code, any causes of action that a Debtors may hold against any entity shall vest in the Reorganized Debtors in accordance with the terms hereof. After the Effective Date, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such causes of action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No entity may rely on the absence of specific reference in the Plan to any cause of action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available causes of action against them. Unless a cause of action is expressly waived, relinquished, released, compromised or settled in the Plan, or any final order, the debtors on behalf of themselves expressly reserves all causes of action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any causes of action upon confirmation or the Effective Date. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all causes of action against any person or entity, except as otherwise expressly provided herein.

14.      <u>Exemption from Transfer Taxes</u>. Pursuant to Code § 1146(c), (i) the issuance, distribution, transfer or exchange of estate property; (ii) the creation, modification, consolidation or recording of any security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of any instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

15.      <u>Procedure for Obtaining Discharge if Plan Confirmed Pursuant to § 1191(b)</u>. If the Plan is confirmed pursuant to Code § 1191(b), then after completing all required payments under the Plan, the Reorganized Debtors may seek a discharge pursuant to Code § 1192 by filing a motion with the Bankruptcy Court that is noticed for hearing and served on all creditors and parties in interest, with an opportunity to object, together with a declaration certifying that all payments required under the Plan have been made.

16.      <u>Governing Law</u>. Except to the extent that the Code or other federal law is applicable or as provided in the Plan, the rights, duties and obligations of the Debtor and any other person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Texas without giving effect to Texas's choice of law provisions.

17.      <u>Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the holders of Claims and Interests, and each of their respective successors and assigns.

18.      <u>Entire Agreement</u>. The Plan, as described herein, and exhibits hereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No

170951849.2

party hereto shall be bound by any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed by the parties in writing.

Dated:  April 28, 2025                                    PREPARED AND SUBMITTED:

*/s/ Stacey Copeland*                                    */s/ Trey Monsour*
DOGS ARE PEOPLE TOO, LLC and             Trey A. Monsour (TX bar No. 14277200)
COPEFORD HOLDINGS, LLC                      Saint Ann Court
                                                               2501 N. Harwood Street, Suite 1800
                                                               Dallas, TX 75201
                                                               Tel: 214/231-5796/Fax: 972/404-0516
                                                               tmonsour@foxrothschild.com
                                                               *Attorneys for Debtor*


**EXHIBITS TO PLAN**

Exhibits 1a through 1d:      Debtor's Most recent Financial Statements (Unaudited)

Exhibit 2:                          Debtor's Liquidation Analysis

Exhibit 3:                          Debtor's Income/Expense Projections

Exhibit 4:                          Loan Commitment Letter