Trey A. Monsour
Tex. Bar No. 14277200
FOX ROTHSCHILD LLP
Saint Ann Court
2501 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone: (214) 231-5796
Facsimile: (972) 404-0516
E-mail:  tmonsour@foxrothschild.com

*Counsel for Debtors*

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Case No. 24-33079(V) |
| Dogs Are People Too, LLC, et al.,[1] | |
| Debtors | Jointly Administered |

### DEBTORS' EMERGENCY MOTION TO COMPEL
### THE SMALL BUSINESS ADMINISTRATION  TO COMPLY WITH
### <u>CONFIRMED PLAN OF REORGANIZATION AND FOR DAMAGES</u>

> **Emergency relief has been requested.  Relief is requested no later than July 16, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **If the Court sets a hearing, you can attend the hearing either in person in Judge Evertt's Courtroom located at 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, TX 75242 OR**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Dogs Are People Too, LLC (1738); Copeford Holdings, LLC (0632)

**online at https://us-courts.webex.com/meet/everett OR
by telephone using Dial-In: 1-650-479-3207 and Access Code: 2304 017 9738.**

**Additional information on attending the hearing can be found on Judge
Everett's homepage: https://www.txnb.uscourts.gov/content/judge-
scott-w-everett**

Debtors, by and through undersigned counsel, respectfully submits this *Emergency Motion to Compel the Small Business Administration to Comply with Confirmed Plan of Reorganization and for Damages* (the "**Motion**"). In support thereof, Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Debtors consent to the entry of final orders and judgments by this Court. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## BACKGROUND

2.      On September 30, 2024 (the "Petition Date"), Debtors each filed a voluntary petition for relief under Title 11, Chapter 11, subchapter V, of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases"). The Debtors have continued in possession of their property and operated and maintained the business as debtors-in-possession pursuant to Bankruptcy Code, Sections 1107(a) and 1108.

3.      On October 8, 2024, Scott Seidel was appointed the Subchapter V Trustee in the Chapter 11 Case.

4.      No committee of unsecured creditors has been appointed.

2

5.     On October 11, 2024, the Court entered its *Order Regarding Filing of Pleadings and Directing Joint Administration of Cases*.

6.     On December 30, 2024, Debtors filed their *Joint Subchapter V Plan of Reorganization*.   On April 11, 2025, Debtors filed their *Amended Joint Subchapter V Plan of Reorganization*.   On April 28, 2025, Debtors filed their *Second Amended Joint Subchapter V Plan of Reorganization* (the "Confirmed Plan").

7.     On May 2, 2025, the Court entered its Order Confirming the Debtors' Second Amended Joint Subchapter V Plan of Reorganization.

8.     Under the terms of the Confirmed Plan, the U.S. Small Business Administration (the "SBA") is the holder of a Class 2 Allowed Claim.   The Confirmed Plan states:

> The holder of a Class 2 Allowed secured claim shall retain its liens in the order of priority that existed prepetition until its Allowed secured claim is paid in full and shall continue to receive cash payments at the rate of $1,700 per month in accordance with the loan documents and continuing on the same date of each month thereafter until the Allowed secured claim is paid in full.

9.     Under the terms of the Confirmation Order, Section 4.01 Class 3 Secured Claim of Sunflower Bank was modified as follows:

> The holder of a Class 3 Allowed secured claim is Sunflower Bank which holds three loans with the Debtors. As of May 15, 2025, Sunflower Bank's aggregate Allowed secured claim with interest on the three loans total $1,345,896.42 through May 15, 2025…On the Effective Date, Sunflower Bank shall subordinate its liens against the Debtors' assets to Bank of DeSoto in exchange for payment of $1.2 million in cash ("Sunflower Cash Payment"). Sunflower Bank will apply the Sunflower Cash Payment to satisfy Loan 3687 (SBA 7a Loan) in full then to other amounts under the other notes in its sole discretion. After the application of the Sunflower Cash Payment, Sunflower's Allowed secured claim will be $145,896.42 to be paid by Debtors in in 36 equal installments of principal and interest ($2,499.45/month) beginning on the 15th day of the first month following the Effective Date and shall bear interest in the amount of 5% per annum with no prepayment penalty.(the "Sunflower Remaining Claim"). The Sunflower Remaining Claim shall be secured by the assets of the Debtors, including the Property, as set forth in the Sunflower Loan Documents (defined below) subordinate

3

only to the liens granted to Bank of DeSoto which shall hold a first priority lien on the assets, including the Property. Sunflower Bank shall retain its second priority lien in the assets, including the Property (without the necessity of any additional UCC or Real Property lien filings), until the Sunflower Remaining Claim is paid in full. Should the Debtors sell the business or the Property while the Sunflower Remaining Claim is outstanding, the Sunflower Remaining Claim shall be accelerated and immediately become due and satisfied in full from the proceeds of the sale of the business and/or Property after paying the broker's commission and closing costs. All loan documents attached to the Sunflower Bank Proof of Claim, including all loan documents executed in connection therewith, whether referenced in the Sunflower Bank Proof of Claim or not, including guarantees, are collectively referred to herein as the "Sunflower Bank Loan Documents." **The Sunflower Bank Loan Documents shall remain in full force and effect except as expressly modified under this Plan, including the subordination to Bank of DeSoto. Notwithstanding anything in this Plan to the contrary, all rights and remedies of Sunflower Bank under the Sunflower Bank Loan Documents shall control** in the event of a default by Debtors in connection with failure to make a payment to Sunflower Bank under the Sunflower Remaining Claim or failure of Debtors to comply with any other provision of the Sunflower Bank Loan Documents, including, but not limited to, rights of acceleration (without notice to cure of any kind which has been waived), all rights of foreclosure of the Debtors' assets and/or the Property, and all reasonable and necessary legal fees/costs incurred by Sunflower Bank in connection with enforcing its rights and remedies under this Plan and/or the Sunflower Bank Loan Documents. Notwithstanding anything in this Plan to the contrary, nothing under this Plan shall release, modify, or otherwise affect the liability under the Sunflower Bank Loan Documents of any non-Debtor borrower/guarantor, including STACEY ALFORD COPELAND, DAVID WAYNE COPELAND, and PET BUDDIES, LLC ("Non-Debtor Guarantors"). Provided the Debtors do not default on their payments to Sunflower under the Plan, Sunflower agrees to forbear from exercising its rights under the Bank Loan Documents against the Non-Debtor Guarantors. Sunflower Bank shall be entitled to any necessary and reasonable legal fees and costs incurred by Sunflower Bank after Confirmation and prior to payoff of the Sunflower Remaining Claim incurred in connection with enforcing its rights under this Plan and/or the Sunflower Loan. (emphasis added)

## BASIS FOR RELIEF

10. The SBA was very active in these bankruptcy cases. The Debtors agreed as adequate protection to continue paying the SBA as it was paying on a prepetition basis so there would be no interruption of payments to the SBA. The Debtors have not missed a payment to the SBA from its inception.,

11.     Sunflower advised the Debtors that it did not want to continue as its lender so the Debtors were forced to find an alternative lender to finance the Debtors out of bankruptcy. At the time of confirmation, Sunflower's claim was in excess of $1.4 million which the SBA was subordinated to. The Debtors could not find take out financing for more than $1.05 million, so to make the plan work, Ms. Copeland invested over a quarter of a million dollars to cover the shortfall and the professionals took large haircuts to make the numbers work. The SBA was actively involved in the negotiations through this period.

12.     The Confirmed Plan was the result of negotiations that provided that Sunflower took a voluntary reduction and agreed that its Allowed claim would be capped at $1,345,896 through May 15, 2025, and would be paid $1.2 million in cash with the remaining approximately $145K paid over three years at 5% interest, provided that Sunflower would subordinate its note to the Bank of DeSoto in the amount of $1.050 million. The SBA was asked to subordinate to both lenders to which they agreed. The reason that the SBA agreed to subordinate to both lenders is because it improved their position. By way of illustration, going into the bankruptcy, the SBA subordinated its lien to a $1.4 million senior lien. Under the confirmed plan, the SBA would be subordinating its lien to $1.2 million senior liens, $145K of which would be satisfied in 36 months, placing the SBA into a second lien position. Because the improvement in their economic position, the SBA agreed to the Confirmed Plan and lodged no opposition at confirmation.

13.     The change from one to two lenders cultivated after the Debtors' plan had been solicited twice and because the plan provided that Sunflower would subordinate to Bank of DeSoto and the Sunflower Bank Loan Documents would remain intact (requiring the SBA to subordinate to Sunflower), the economics improved for the SBA, and it was a fully consensual

plan, the Debtors pressed forward with confirmation. At confirmation, the SBA knew there were two lenders to subordinate to, knew their economic position improved and did not lodge an objection or request any modifications to the Confirmed Plan. The Debtors believed they achieved a consensual plan and it would be sooth sailing to the effective date.

14. During the transition of the Trump administration, the SBA saw a drastic reduction in its work force including the attorneys who worked on the Debtors' cases and negotiated the Confirmed Plan.

15. The parties were ready to close the transactions under the Confirmed Plan and the SBA refused to sign the necessary subordination agreement as the plan contemplated. After weeks of being ignored, the Debtors threatened to file this Motion to get relief from the Court and for damages. In response to that threat, the SBA agreed to sign a subordination agreement and sent a draft subordinating only to Sunflower in the amount of approximately $1.4 million which was the deal prepetition and not the deal under the Confirmed Plan. The parties revised the subordination agreement as contemplated in the Confirmed Plan reminding the SBA that its subordination would be economically more beneficial to the SBA. Notwithstanding this, the SBA refuses to sign the subordination agreement subordinating its position to both Bank of DeSoto and Sunflower and informed the Debtors of its position on June 8, 2025. Interest has been accruing every day since May 15, 2025, and the only reason the Debtors cannot close the transactions and go effective is because the SBA refuses to live up to the agreement it made in the consensual Confirmed Plan.

16. The Debtors request an emergency hearing to compel the SBA to sign the subordination agreement so the Debtors can emerge from bankruptcy. The proposed subordination agreement the SBA sent to the Debtors which is not the deal under the Confirmed

6

Plan is marked as **Exhibit "A"**. The corrected subordination agreement with tracked changes to the SBA's version is marked as **Exhibit "B"**. It is Exhibit "B" that the Debtors request that the SBA be required to sign. It tracks the treatment in the Confirmed Plan.

17.     Additionally, the Debtors seek reimbursement from the SBA of the interest charges that Sunflower has been accruing since May 15, 2025, and attorneys' fees not to exceed $4,000 to file and prosecute this Motion, because the SBA's delay has been the sole reason the Debtors have not emerged from bankruptcy. The Debtors will prove up their attorneys' fees and the hearing.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons set forth herein, Debtors respectfully request entry of an order compelling the SBA to Comply with the terms of the Confirmed Plan and sign the subordination agreement marked as Exhibit "B", award damages and grant such other relief as is just and proper.

Dated: July 9, 2025

**FOX ROTHSCHILD LLP**
*/s/ Trey A. Monsour*

Trey A. Monsour, Esq.
State Bar No. 14277200
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201-1613
Telephone: (214) 231-5796
Email: tmonsour@foxrothschild.com

*Attorneys for Debtors*

174306639.1

## CERTIFICATE OF CONFERENCE

On July 9, 2025, I reached out by electronic mail to counsel for the Small Business Administration, counsel for Sunflower Bank, counsel for the taxing authorities, the Subchapter V Trustee and counsel for the U.S. Trustee about the requested motion with a brief explanation that the motion would be sought on an emergency basis and the parties only had to respond if they opposed the relief.  No one responded.

*/s/ Trey Monsour*
Trey A. Monsour
Tex. Bar No. 14277200


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on July 9, 2025 (i) via the Court's ECF system to all parties authorized to receive notice in this case;  and (ii) via electronic mail on the parties listed on the list attached hereto.

*/s/ Trey Monsour*
Trey A. Monsour
Tex. Bar No. 14277200

174306639.1

## SERVICE LIST

Sherrel K. Knighton on behalf of Creditor Dallas County
Sherrel.Knighton@lgbs.com,
 Dora.Casiano-Perez@lgbs.com;
Sean.French@lgbs.com;
Eva.Parker@lgbs.com;
Alexis.Hall@lgbs.com;Dallas. Bankruptcy@lgbs.com

John Kendrick Turner on behalf of Creditor Dallas County
john.turner@lgbs.com

Michael Paul Menton on behalf of Creditor Sunflower Bank
mmenton@settlepou.com

Scott M. Seidel -SBRA V
scott@scottseidel.com,
csms11@trustesolutions.net;
susan.seidel@earthlink.net

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Susan Hersh, Esq. (Office of the United States Trustee)
Susan.Hersh@usdoj.gov

Asher Bublick, Esq. (Office of the United States Trustee)
Asher.Bublick@usdoj.gov

David G. Adams (Small Business Administration)
David.g.adams@usdoj.gov

Tami Parker (Small Business Administration)
Tami.Parker@usdoj.gov

Vicki K. McCarthy
vmccar1106@aol.com

9

# EXHIBIT A

## SUBORDINATION AGREEMENT IN FAVOR OF LENDER

The **U.S. Small Business Administration**, an agency of the Government of the United States of America (hereinafter referred to as "SBA"), hereby represents that it is the holder of a lien on certain collateral (described below and hereinafter referred to as the "Collateral Security") of **DOGS ARE PEOPLE TOO LLC** (hereinafter referred to as "Debtor").

SAID LIEN was created to secure SBA Loan Number **3343917808** by Debtor's execution and delivery of a Security Agreement dated **May 26, 2020**, as amended **October 16, 2021,** and perfected by the filing of a UCC-1 Financing Statement on **June 3, 2020,  and continued by UCC-Continuation filed on May 22, 2025,** as File Number **200022479551** with the State of **Texas**. SBA Loan Number **3343917808** is also secured by the Note(s) dated **May 26, 2020**, as amended **October 16, 2021,** in the principal amount of **$354,100.00**. The Collateral Security is more fully described and set forth in said Security Agreements and UCC-1 and described below:

> The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to:(a)inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

DEBTOR has requested **SBA to subordinate** the lien on all non-real estate business assets for **DOGS ARE PEOPLE TOO LLC (hereinafter referred to as "Subordinated Collateral")** to a lien in favor of **SunFlower Bank,** (hereinafter referred to as "Lender") securing a Note in the maximum principal sum of **$103,300.00** (hereinafter referred to as "Lender's Note"),**with Sunflower Account Number ending with 3687) less any payments made,** and SBA has agreed to Subordinate its **Subordinated Collateral** *so long as SBA retains its **Subordinated Collateral** priority with regard to all other legal and equitable interests other than as set forth herein.* **Once the Sunflower Bank, ending with 3687, is paid in full, the SBA will be in first position as lienholder.**

NOW THEREFORE, as set forth in this Subordination Agreement, **SBA does hereby subordinate** its lien on the **Subordinated Collateral** to a security interest in favor of Lender, securing the Lender's Note.

SAID SUBORDINATION shall be limited to amounts due to Lender for principal and interest payments on the Lender's Note. Lender agrees that the lien instruments securing their loan (a) have no open-ended features unless the Lender's Note is pursuant to a revolving line of credit, to which SBA acknowledges that Debtor may borrow, pay down and reborrow loan funds up to the maximum principal amount of **$103,300.00**; as well as allow only advances necessary to preserve the **Subordinated Collateral,** such as advances for tax payments and insurance, and (b) are not cross-collateralized with any other financing.  If the documents pertaining to Lender's Note contain these provisions, Lender

acknowledges that this Subordination Agreement requires the Lender to waive these provisions with respect to the **Subordinated Collateral** only and the lien of the SBA in the Subordinated Collateral will be subordinate only to the allowed amounts as specified in this paragraph.

SBA Loan # **3343917808** / Application # **3300644944**

IN ALL OTHER respects, SBA's lien on the **Subordinated Collateral** and its priority position as to all other liens on said property not specifically subordinated herein remains in full force and effect. The terms of this Subordination Agreement apply solely to obligations listed in this agreement, and do not apply to any other obligation that Borrower may have with Lender.

THIS SUBORDINATION AGREEMENT is made on the condition that Lender must provide SBA written notice of the following by overnight or two (2) day mail delivery to the SBA address identified below: (1) any action as a result of default on Lender's Note at least (30) days prior to such action, including any foreclosure action, and (2) any sale of the Subordinated Collateral at least thirty (30) days prior to the sale of such collateral, except that notice of sale of perishable items is not required. Failure to satisfy the conditions set forth in this paragraph will render the Subordination Agreement null and void.

**Address for Notice to SBA (Servicing Address):**

**US Small Business Administration**
**COVID EIDL Servicing Center**
**14925 Kingsport Rd**
**Fort Worth, TX 76155-2243**

THIS SUBORDINATION AGREEMENT is made on the condition that Lender will return a signed Subordination Agreement to SBA at CovidEIDLServicing@sba.gov within five (5) business days of receipt of the Subordination Agreement.

THIS SUBORDINATION AGREEMENT will terminate upon payment in full of Lender's Note and the Lender's Revolving Line of Credit, if applicable, or the SBA Loan, unless otherwise agreed to in writing by Lender and SBA.

THIS SUBORDINATION AGREEMENT shall be interpreted under the laws of the United States. SBA and Lender may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes, but by using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax, or liability. Lender may not claim or assert against SBA any local or state law to deny any obligation of the Debtor or defeat any claim of SBA with respect to the Collateral Security.

This instrument is executed by authorized representatives of U.S. Small Business Administration and **SunFlower Bank**.

**U.S. Small Business Administration**

Date:_____     By: _____
                                 **Cristina Lynch, Attorney**

                                 **SunFlower Bank**

Date:_____     By: _____
                                 **Printed Name:_____**
                                 **Title:_____**

## SUBORDINATION AGREEMENT IN FAVOR OF LENDER

The **U.S. Small Business Administration**, an agency of the Government of the United States of America (hereinafter referred to as "SBA"), hereby represents that it is the holder of a lien on certain collateral (described below and hereinafter referred to as the "Collateral Security") of **DOGS ARE PEOPLE TOO LLC** (hereinafter referred to as "Debtor").

SAID LIEN was created to secure SBA Loan Number **3343917808** by Debtor's execution and delivery of a Security Agreement dated **May 26, 2020**, as amended **October 16, 2021,** and perfected by the filing of a UCC-1 Financing Statement on **June 3, 2020, and continued by UCC-Continuation filed on May 22, 2025,** as File Number **200022479551** with the State of **Texas**. SBA Loan Number **3343917808** is also secured by the Note(s) dated **May 26, 2020,** as amended **October 16, 2021,** in the principal amount of **$354,100.00**. The Collateral Security is more fully described and set forth in said Security Agreements and UCC-1 and described below:

> The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to:(a)inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

DEBTOR has requested **SBA to subordinate** the lien on all non-real estate business assets for **DOGS ARE PEOPLE TOO LLC (hereinafter referred to as "Subordinated Collateral")** to a lien in favor of **SunFlower Bank,** (hereinafter referred to as "Lender") securing a Note in the maximum principal sum of **$592,669.00** (hereinafter referred to as "Lender's Note") **with Sunflower Account Number ending with 3686) less any payments made**, and SBA has agreed to Subordinate its **Subordinated Collateral** *so long as SBA retains its **Subordinated Collateral** priority with regard to all other legal and equitable interests other than as set forth herein.* **Once the Sunflower Bank, ending with 3686, is paid in full, the SBA will be in first position as lienholder.**

NOW THEREFORE, as set forth in this Subordination Agreement, **SBA does hereby subordinate** its lien on the **Subordinated Collateral** to a security interest in favor of Lender, securing the Lender's Note.

SAID SUBORDINATION shall be limited to amounts due to Lender for principal and interest payments on the Lender's Note. Lender agrees that the lien instruments securing their loan (a) have no open-ended features unless the Lender's Note is pursuant to a revolving line of credit, to which SBA acknowledges that Debtor may borrow, pay down and reborrow loan funds up to the maximum principal amount of **$592,669.00**; as well as allow only advances necessary to preserve the **Subordinated Collateral,** such as advances for tax payments and insurance, and (b) are not cross-collateralized with any other financing. If the documents pertaining to Lender's Note contain these provisions, Lender acknowledges that this Subordination Agreement requires the Lender to waive these provisions with

respect to the **Subordinated Collateral** only and the lien of the SBA in the Subordinated Collateral will be subordinate only to the allowed amounts as specified in this paragraph.

SBA Loan # **3343917808** / Application # **3300644944**

IN ALL OTHER respects, SBA's lien on the **Subordinated Collateral** and its priority position as to all other liens on said property not specifically subordinated herein remains in full force and effect. The terms of this Subordination Agreement apply solely to obligations listed in this agreement, and do not apply to any other obligation that Borrower may have with Lender.

THIS SUBORDINATION AGREEMENT is made on the condition that Lender must provide SBA written notice of the following by overnight or two (2) day mail delivery to the SBA address identified below: (1) any action as a result of default on Lender's Note at least (30) days prior to such action, including any foreclosure action, and (2) any sale of the Subordinated Collateral at least thirty (30) days prior to the sale of such collateral, except that notice of sale of perishable items is not required. Failure to satisfy the conditions set forth in this paragraph will render the Subordination Agreement null and void.

**Address for Notice to SBA (Servicing Address):**

**US Small Business Administration**
**COVID EIDL Servicing Center**
**14925 Kingsport Rd**
**Fort Worth, TX 76155-2243**

THIS SUBORDINATION AGREEMENT is made on the condition that Lender will return a signed Subordination Agreement to SBA at CovidEIDLServicing@sba.gov within five (5) business days of receipt of the Subordination Agreement.

THIS SUBORDINATION AGREEMENT will terminate upon payment in full of Lender's Note and the Lender's Revolving Line of Credit, if applicable, or the SBA Loan, unless otherwise agreed to in writing by Lender and SBA.

THIS SUBORDINATION AGREEMENT shall be interpreted under the laws of the United States. SBA and Lender may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes, but by using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax, or liability. Lender may not claim or assert against SBA any local or state law to deny any obligation of the Debtor or defeat any claim of SBA with respect to the Collateral Security.

This instrument is executed by authorized representatives of U.S. Small Business Administration and **SunFlower Bank**.

**U.S. Small Business Administration**

Date:_____     By: _____
                                  **Cristina Lynch, Attorney**

                                  **SunFlower Bank**

Date:_____     By: _____
                                  **Printed Name:_____**
                                  **Title:_____**

2

## SUBORDINATION AGREEMENT IN FAVOR OF LENDER

The **U.S. Small Business Administration**, an agency of the Government of the United States of America (hereinafter referred to as "SBA"), hereby represents that it is the holder of a lien on certain collateral (described below and hereinafter referred to as the "Collateral Security") of **DOGS ARE PEOPLE TOO LLC** (hereinafter referred to as "Debtor").

SAID LIEN was created to secure SBA Loan Number **3343917808** by Debtor's execution and delivery of a Security Agreement dated **May 26, 2020**, as amended **October 16, 2021,** and perfected by the filing of a UCC-1 Financing Statement on **June 3, 2020, and continued by UCC-Continuation filed on May 22, 2025,** as File Number **200022479551** with the State of **Texas**. SBA Loan Number **3343917808** is also secured by the Note(s) dated **May 26, 2020**, as amended **October 16, 2021,** in the principal amount of **$354,100.00**.The Collateral Security is more fully described and set forth in said Security Agreements and UCC-1 and described below:

> The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to:(a)inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

DEBTOR has requested **SBA to subordinate** the lien on all non-real estate business assets for **DOGS ARE PEOPLE TOO LLC (hereinafter referred to as "Subordinated Collateral")** to a lien in favor of **SunFlower Bank,** (hereinafter referred to as "Lender") securing a Note in the maximum principal sum of **$740,838.00** (hereinafter referred to as "Lender's Note") **with Sunflower Account Number ending with 3685) less any payments made**, and SBA has agreed to Subordinate its **Subordinated Collateral** *so long as SBA retains its **Subordinated Collateral** priority with regard to all other legal and equitable interests other than as set forth herein*. **Once the Sunflower Bank, ending with 3685, is paid in full, the SBA will be in first position as lienholder.**

NOW THEREFORE, as set forth in this Subordination Agreement, **SBA does hereby subordinate** its lien on the **Subordinated Collateral** to a security interest in favor of Lender, securing the Lender's Note.

SAID SUBORDINATION shall be limited to amounts due to Lender for principal and interest payments on the Lender's Note. Lender agrees that the lien instruments securing their loan (a) have no open-ended features unless the Lender's Note is pursuant to a revolving line of credit, to which SBA acknowledges that Debtor may borrow, pay down and reborrow loan funds up to the maximum principal amount of **$740,838.00**; as well as allow only advances necessary to preserve the **Subordinated Collateral,** such as advances for tax payments and insurance, and

(b) are not cross-collateralized with any other financing. If the documents pertaining to Lender's Note contain these provisions, Lender acknowledges that this Subordination Agreement requires the Lender to waive these provisions with respect to the **Subordinated Collateral** only and the lien of the SBA in the Subordinated Collateral will be subordinate only to the allowed amounts as specified in this paragraph.

IN ALL OTHER respects, SBA's lien on the **Subordinated Collateral** and its priority position as to all other liens on said property not specifically subordinated herein remains in full force and effect. The terms of this Subordination Agreement apply solely to obligations listed in this agreement, and do not apply to any other obligation that Borrower may have with Lender.

THIS SUBORDINATION AGREEMENT is made on the condition that Lender must provide SBA written notice of the following by overnight or two (2) day mail delivery to the SBA address identified below: (1) any action as a result of default on Lender's Note at least (30) days prior to such action, including any foreclosure action, and (2) any sale of the Subordinated Collateral at least thirty (30) days prior to the sale of such collateral, except that notice of sale of perishable items is not required. Failure to satisfy the conditions set forth in this paragraph will render the Subordination Agreement null and void.

**Address for Notice to SBA (Servicing Address):**

**US Small Business Administration**
**COVID EIDL Servicing Center**
**14925 Kingsport Rd**
**Fort Worth, TX 76155-2243**

THIS SUBORDINATION AGREEMENT is made on the condition that Lender will return a signed Subordination Agreement to SBA at [CovidEIDLServicing@sba.gov](mailto:CovidEIDLServicing@sba.gov) within five (5) business days of receipt of the Subordination Agreement.

THIS SUBORDINATION AGREEMENT will terminate upon payment in full of Lender's Note and the Lender's Revolving Line of Credit, if applicable, or the SBA Loan, unless otherwise agreed to in writing by Lender and SBA.

THIS SUBORDINATION AGREEMENT shall be interpreted under the laws of the United States. SBA and Lender may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes, but by using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax, or liability. Lender may not claim or assert against SBA any local or state law to deny any obligation of the Debtor or defeat any claim of SBA with respect to the Collateral Security.

This instrument is executed by authorized representatives of U.S. Small Business Administration and **SunFlower Bank**.

**U.S. Small Business Administration**

Date:_____     By: _____
                                    **Cristina Lynch,**
                                    **Attorney**

                                    **SunFlower Bank**

Date:_____     By: _____
                                    **Printed Name:**_____
                                    **Title:**_____

# EXHIBIT B

## SUBORDINATION AGREEMENT IN FAVOR OF LENDER

The **U.S. Small Business Administration**, an agency of the Government of the United States of America (hereinafter referred to as "SBA"), hereby represents that it is the holder of a lien on certain collateral (described below and hereinafter referred to as the "Collateral Security") of **DOGS ARE PEOPLE TOO LLC** (hereinafter referred to as "Debtor").

SAID LIEN was created to secure SBA Loan Number **3343917808** by Debtor's execution and delivery of a Security Agreement dated **May 26, 2020**, as amended **October 16, 2021,** and perfected by the filing of a UCC-1 Financing Statement on **June 3, 2020, and continued by UCC-Continuation filed on May 22, 2025,** as File Number **200022479551** with the State of **Texas**. SBA Loan Number **3343917808** is also secured by the Note(s) dated **May 26, 2020**, as amended **October 16, 2021,** in the principal amount of **$354,100.00**. The Collateral Security is more fully described and set forth in said Security Agreements and UCC-1 and described below:

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to:(a)inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

DEBTOR has requested **SBA to subordinate** the lien on all non-real estate business assets for **DOGS ARE PEOPLE TOO LLC (hereinafter referred to as "Subordinated Collateral")** to a lien in favor of **Bank of DeSoto** ~~SunFlower Bank,~~ (hereinafter referred to as "Lender") securing a Note in the maximum principal sum of **$1,050,000.00** ~~03,300.00~~ (hereinafter referred to as "Lender's Note"),~~with Sunflower Account Number ending with 3687) less any payments made,~~ and SBA has agreed to Subordinate its **Subordinated Collateral** *so long as SBA retains its* ***Subordinated Collateral*** *priority with regard to all other legal and equitable interests other than as set forth herein.* **Once Lender** ~~the Sunflower Bank, ending with 3687,~~ **is paid in full, the SBA will be in same position as it was prior to this Subordination Agreement. Nothing in this Subordination Agreement shall affect the lien position of the SBA as between the SBA and Sunflower Bank successor-by-merger to Pioneer Bank, SSB ("Sunflower"). Sunflower and the SBA executed that certain** *Subordination Agreement in Favor of Lender* **dated August 19, 2021 (the "Sunflower Subordination") in favor of Sunflower's UCC Financing Statement Nos. 19-0045591711, 21-0010468355, 21-0010472552, and 21-0010473068 (collectively, the "Sunflower UCC"). The Sunflower UCC shall remain superior to the SBA on the Collateral until Sunflower is paid in full.** ~~first position as lienholder.~~

NOW THEREFORE, as set forth in this Subordination Agreement, **SBA does hereby subordinate** its lien on the **Subordinated Collateral** to a security interest in favor of Lender, securing the Lender's Note.

173870462.1

SAID SUBORDINATION shall be limited to amounts due to Lender for principal and interest payments on the Lender's Note. Lender agrees that the lien instruments securing their loan (a) have no open-ended features ~~unless the Lender's Note is pursuant to a revolving line of credit, to which SBA acknowledges that Debtor may borrow, pay down and reborrow loan funds up to the maximum principal amount of **$103,300.00**; as well as allow only advances necessary to preserve the **Subordinated Collateral,** such as advances for tax payments and insurance~~, and (b) are not cross-collateralized with any other financing.  If the documents pertaining to Lender's Note contain these provisions, Lender

173870462.1

2

acknowledges that this Subordination Agreement requires the Lender to waive these provisions with respect to the **Subordinated Collateral** only and the lien of the SBA in the Subordinated Collateral will be subordinate only to the allowed amounts as specified in this paragraph.

SBA Loan # **3343917808** / Application # **3300644944**

IN ALL OTHER respects, and other than the Sunflower Subordination, SBA's lien on the **Subordinated Collateral** and its priority position as to all other liens on said property not specifically subordinated herein remains in full force and effect. The terms of this Subordination Agreement apply solely to obligations listed in this agreement, and do not apply to any other obligation that Borrower may have with Lender.

THIS SUBORDINATION AGREEMENT is made on the condition that Lender must provide SBA written notice of the following by overnight or two (2) day mail delivery to the SBA address identified below: (1) any action as a result of default on Lender's Note at least (30) days prior to such action, including any foreclosure action, and (2) any sale of the Subordinated Collateral at least thirty (30) days prior to the sale of such collateral, except that notice of sale of perishable items is not required. Failure to satisfy the conditions set forth in this paragraph will render the Subordination Agreement null and void.

**Address for Notice to SBA (Servicing Address):**

**US Small Business Administration**
**COVID EIDL Servicing Center**
**14925 Kingsport Rd**
**Fort Worth, TX 76155-2243**

THIS SUBORDINATION AGREEMENT is made on the condition that Lender will return a signed Subordination Agreement to SBA at CovidEIDLServicing@sba.gov within five (5) business days of receipt of the Subordination Agreement.

THIS SUBORDINATION AGREEMENT will terminate upon payment in full of Lender's Note and the Lender's Revolving Line of Credit, if applicable, or the SBA Loan, unless otherwise agreed to in writing by Lender and SBA.

THIS SUBORDINATION AGREEMENT shall be interpreted under the laws of the United States. SBA and Lender may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes, but by using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax, or liability. Lender may not claim or assert against SBA any local or state law to deny any obligation of the Debtor or defeat any claim of SBA with respect to the Collateral Security.

This instrument is executed by authorized representatives of U.S. Small Business Administration and **Lender**~~SunFlower Bank~~.

**U.S. Small Business Administration**

Date:_____    By: _____
**Cristina Lynch, Attorney**

~~SunFlower Bank~~**Bank of DeSoto**

By: _____
Date:_____

173870462.1

3

**Printed Name:**

**Title:**